## SHANKLE v. CROWDER.

400

No. 8401.   FEBRUARY 17, 1932.

401

*Rosser & Shaw* and *Maddox, Matthews & Owens,* for plaintiff in error.

*S. W. Fariss,* contra.

ATKINSON, J. ■ The ruling announced in the first headnote does not require elaboration.

■ The witness Mrs. Mulkey, introduced by the propounder, testified that while the alleged testator was being carried in an ambulance to the hospital, immediately after he was shot, the following conversation took place between him and the witness: "Charley told me that he was going to die and he wanted Miss Crowder to have what he had and his car, and I asked him what he had, and he told me. He said he had some notes and a few cattle, and some horses or mules, I don't know which; and that's all he said; and I said, Charley, you mean after your debts are paid? and he said yes, and that was all he said. He said he wanted me to see to it that Miss Bernice got that; those are his words. . . He could speak distinctly then. . . He never said anything about making a will, he did not mention a will directly or indirectly, he just simply said he wanted Miss Crowder to have what he had. He lapsed into unconsciousness before we got to the hospital. I was with him all night, and I don't think he recovered consciousness." Another witness, Houston Camp, testified substantially to the same conversation. When the testimony of each of these witnesses was delivered, the attorneys for the caveator moved to rule it out on the ground that "the evidence showed that such statements were not made in connection with or with reference to the making of any will, or disposition of his property by a will, and that said testimony was immaterial and irrelevant and necessarily prejudicial." In the 9th and 10th grounds of the motion for new trial complaint is made of the refusal to rule out the foregoing evidence. These grounds are without merit. The caveat was based in part upon the ground of lack of testamentary capacity, and undue influence upon the testator; and the evidence objected to tended to show an anticipated disposition of the property of the testator in a particular way consistent with the provisions of the alleged will. It was held in *Williamson* v. *Nabers,* 14 *Ga.* 286: "Parol evidence of a testator's previous declarations is admissible when offered, not to explain, alter, or contradict the will, but simply to show, as presumptive evidence of testamentary

capacity, long-continued expressions of a purpose to dispose of his property in a particular way. For the same reason, such evidence of repeated declarations, manifesting a long-continued purpose, is admissible to rebut the presumption of undue influence." This ruling has been followed in *Ogburn* v. *Jones,* 142 *Ga.* 360 (82 S. E. 1070); *Chedel* v. *Mooney,* 158 *Ga.* 297 (123 S. E. 300). See generally, on the subject: *Dennis* v. *Weekes,* 51 *Ga.* 25; *Mallery* v. *Young,* 94 *Ga.* 804 (22 S. E. 142); *Credille* v. *Credille,* 123 *Ga.* 673 (51 S. E. 628, 107 Am. St. R. 157); *Rea* v. *Pursley,* 170 *Ga.* 788 (154 S. E. 325). The brief for the plaintiff in error, on these grounds of the motion for new trial, concludes as follows: "So far as we have been able to find, [in] every case in which declarations of the testator were admitted in evidence the declarations were made in contemplation of, or in connection with, the making of the will; and some other issue, such as fraud, undue influence, forgery, etc., were involved. In every case too, where lack of testamentary capacity was involved, that lack of testamentary capacity was based upon actual mental weakness. None of those cases are in any way similar to the present case, and we insist are wholly inapplicable to the present case. In this case none of the declarations admitted in evidence were made in contemplation of, or in connection with, the making of any will, but were mere loose expressions to the effect that he wanted Miss Crowder to have his property. In this case there was no such issue as fraud or undue influence, or that generally there was any weakness of intellect. . . This will now offered for probate was not prepared at his suggestion or under his direction, and, so far as the evidence shows, there is nothing even tending to show that he ever knew anything about it, save only the testimony of two nurses that it was placed in their possession by interested parties with instructions to get it executed, and that when read over to him he nodded his head in apparent assent thereto, just as he apparently assented to everything else that was said to him. The whole case for the propounder depends upon a mere nod of the head. Mr. Andrews and Sheriff Keown testified that he gave a similar nod of the head when they asked him if he wanted each of them to have his property." These contentions do not take into consideration the grounds of the caveat relating to mental incapacity and undue influence upon the alleged testator at the

time the paper was alleged to be signed; neither do they consider that the evidence objected to must be regarded with the contents of the paper and other evidence as to the manner and circumstances under which it was signed. All of these are to be taken into consideration on the question of admissibility of the evidence. The weight of the evidence is another question.

■ The witness Bob Kinney testified that "last summer sometime" the testator had blood-poisoning in his finger, and, while going back home from the doctor's, testator said, "if anything happened, to let Bernice or some of her people know he wanted her to have his property." This evidence was admitted over the objection that it was "too remote to throw any light on his intention." Another witness, Clarence Hobbs, testified that "last summer" he and the testator "were talking about his condition the night before, and he said he thought it was his last night, that he thought he was going to die·during the night, and that if anything happened to him, and he did not have time to make a will, he wanted Bernice Crowder to have what he had." This evidence was admitted over the objection that "it is too remote in time to have any connection with the transaction under investigation, and is not in rebuttal of anything offered by the caveator." The propounder, as a witness in her own behalf, testified that the testator "told me several times, at different times, that he wanted me to have what he had, he told me that last summer just after I got home from summer school." Counsel for the caveator moved to exclude this evidence "on the ground that it is too remote . . to throw any light on the execution of this alleged will." In the 13th, 14th, and 15th grounds of the motion for new trial complaint is made of the rulings of the court on the admissibility of this evidence. The only ground of objection was that the time of making the declarations was too remote. There is no merit in these grounds. In *Ogburn* v. *Jones,* supra, the declarations held to be admissible were made three years before the execution of the paper. In the instant case the paper was dated March 25, 1930. The witnesses who were testifying at the trial in August, 1930, stated that the declarations were made "last summer," meaning the summer of 1929, and consequently that they were made less than one year before the date of the alleged paper, which was March 25, 1930.

■ The ruling announced in the fourth headnote does not require elaboration.

■ The seventh ground of the motion for a new trial complains of a charge to the jury, "that parol evidence of a testator's previous declarations are admissible when offered, not to explain, alter, or contradict the will, but simply to show, as presumptive evidence of testamentary capacity, long-continued expressions of a purpose to dispose of his property in a particular way." The grounds of objection stated are: "(a) That the admission or rejection of evidence is solely for determination by the court, and that it was improper and prejudicial to movant for the trial judge to explain or give his reasons to the jury for admitting evidence along the line indicated in said charge. (b) That said charge as given was an expression or intimation of opinion that evidence of previous declarations showed long-continued expressions of a purpose to dispose of his property in a particular way. (c) That said charge as given was an expression or intimation of opinion on the part of the trial judge that parol evidence of a testator's previous declarations were presumptive evidence of testamentary capacity. (d) That said charge as given was calculated to and did lead the jury to believe that they were instructed by the court to consider previous declarations on the part of the alleged testator as presumptive evidence of his testamentary capacity at the time the instrument offered for probate in this case is claimed to have been executed. (e) That said charge as given, as applied to previous declarations of the testator, as shown in the evidence, instructed the jury, in substance and effect, that they might consider such previous declarations as presumptive evidence of testamentary capacity on the part of C. C. Shankle at the time the instrument offered for probate is claimed to have been executed. (f) That said charge was an intimation or expression of opinion on the part of the court, and the same was calculated to and did lead the jury to believe that the court was of the opinion, and that they were instructed, that previous declarations of the testator, with reference to the disposition of his property, as testified to by certain witnesses, amounted to and were expressions of a purpose to dispose of his property in the manner and as provided in the instrument offered for probate as the last will and testament of said C. C. Shankle."

The majority of this court holds that the charge excepted to

was not the expression of an opinion upon the issues of fact involved in the case, and was not erroneous for any of the reasons assigned. The writer dissents from this ruling. The following expresses his views upon the assignments of error:

The charge excepted to is substantially the language of this court quoted in the second division of this opinion from the decision in *Williamson* v. *Nabers*, 14 *Ga.* 286. It is not good practice for a trial judge in charging the jury to give his reasons for admitting evidence. *Howard* v. *State*, 144 *Ga.* 169 (86 S. E. 540). The Supreme Court in discussing a case may employ language which a trial judge may not use in his charge to the jury. *Atlanta & West Point Railroad Co.* v. *Hudson*, 123 *Ga.* 108(2) (51 S. E. 29). In this State the propounder of a will can not make out a prima facie case by merely proving the factum of the will and relying on a legal presumption of sanity, but must introduce evidence on the subject of sanity, in making out such prima facie case. *Penn* v. *Thurman*, 144 *Ga.* 67(2) (86 S. E. 233). The evidence must show affirmatively that at the time of signing the paper the alleged testator apparently had sufficient mental capacity to make a will. *Slaughter* v. *Heath*, 127 *Ga.* 747(9) (57 S. E. 69, 27 L. R. A. (N. S.) 1). In the instant case there was evidence that the alleged testator had made prior statements, some as long as practically one year before and others practically two days before the alleged execution of the paper, that were consistent with its provisions. The alleged testator received mortal wounds Monday afternoon, by being shot. He was immediately carried to the hospital to which he was admitted at 7:30 o'clock that night. He died on the following Thursday. Other evidence tended to show that the last statements referred to above were made while he was being carried to the hospital; that before reaching the hospital he lapsed into unconsciousness and remained so practically all night, and could not be aroused the next day when officers desired to get a dying declaration; that one of the officers, having heard of the statements, went into another room, prepared the paper in question, and returned to the bedside for the purpose of having it executed if the patient was in condition to make a will; that the officer, seeing the patient again, determined that he could not make a will, and left the paper with the hospital nurses with instructions, "if he roused," to see if he wanted to

sign it as his will; that when the officers left, the patient remained in a state of unconsciousness and in a state of coma until between eight and nine o'clock during the night, when he was aroused by one of the nurses and induced to take a drink of water; that during a short period after being so aroused the nurses reached the conclusion that he was conscious although he could not speak or make a mark; that during such period the paper was read over to the patient several times, and he was asked if he wished to leave his property as expressed in the paper, and if he wished to sign the paper as his will and wished them to sign it as witnesses, to all of which he manifested his answer by a shake or nod of the head, indicative of an affirmative answer; that one of the nurses signed his name to the paper; and that when it was offered to him for the purpose of making a mark at the place his name was signed, he was unable to do so, but made an indistinct mark at another place on the paper; whereupon one of the nurses took his hand with the pen and guided it in making the mark at the place of the signature; and that during all the time the patient was in the hospital he was kept under the influence of narcotics.

A statement of this evidence shows that whether the alleged testator had mental capacity to make a will was at best an exceedingly close question. In the circumstances the charge complained of bore directly upon a vital issue in the case. The prior declarations, some made before the tragedy and others afterwards but before unconsciousness of the victim, are entitled to consideration on the question of his mental condition at the time the paper was signed, subsequently to his lapse into unconsciousness and a state of coma. The weight of the evidence, however, would be for the jury, upon which the judge should not express or intimate an opinion. Civil Code, § 4863. The instruction to the jury, as applied to the facts stated above, was the conclusion or opinion of the judge that on the basis of a presumption of testamentary capacity the declarations of the alleged testator would suffice to establish the paper as a will, without further evidence on that question.

The first special ground of the motion for a new trial complains of the following excerpts from the charge to the jury: "I charge you, gentlemen, that in this case the burden is, in the first instance, on the propounder of the alleged will . . to make out

a prima facie case, showing the factum of the will and that at the time of its execution the testator apparently had sufficient mental capacity to make it, and in making it acted freely and voluntarily. When this is done the burden of proof shifts to the caveator, Mr. Shankle, and he would have to carry the burden placed upon him, to show at the time of the execution of the will that C. C. Shankle did not have sufficient capacity to execute the will." "I charge you, gentlemen, that under the evidence in this case, as applied to the law, that there is only one question for your determination, and that is as to whether or not C. C. Shankle, at the time of the execution of this will, if it was executed, had sufficient mental capacity to execute a will; that is the sole question for your determination." "As stated, gentlemen, heretofore, the sole question for your determination is as to whether or not at the time of the execution of the will, if it was executed, the testator, that is, C. C. Shankle, had sufficient mental capacity to make and execute a will." "So, gentlemen, you apply the evidence in this case to these rules of law, and you determine this one issue that I have submitted to you, as stated, whether or not C. C. Shankle had sufficient testamentary capacity to execute the will at the time it was executed, if it was so executed." "Gentlemen, if you find, under the rules of law I have given you in charge, that he did have sufficient testamentary capacity at the time of the execution of the will, if it was executed, then, gentlemen, that it would be your duty to find in favor of the propounder, that is Miss Crowder, in this case." "On the other hand, if you find that C. C. Shankle did not have sufficient testamentary capacity to execute the will, then, gentlemen, I charge you that it would be your duty to find in favor of the caveator, Mr. G. S. Shankle." "So, gentlemen, if you find in favor of the will, that is, as stated, that Mr. Shankle did have sufficient testamentary capacity to execute the will, then, gentlemen, the form of your verdict would be—We, the jury, find in favor of the propounder. That would mean, gentlemen, that you find in favor of the will as set up, or sought to be set up, by Miss Crowder. On the other hand, if you find he did not have sufficient testamentary capacity to execute the will, then, gentlemen, the form of your verdict would be—We, the jury, find in favor of the caveator. That would mean you find against the will."

Complaint of "these various extracts from the charge" is: " (a)

That in so stating the issues, and in instructing the jury thereon, the trial judge omitted and failed and refused to submit to the jury the first ground of the caveat to the effect that the instrument offered for probate as the last will and testament of C. C. Shankle was never signed, published, or declared by the said C. C. Shankle as his last will and testament. (b) That said several charges of the court, taken together and separately, amounted to an expression or intimation of opinion by the trial judge that said instrument had been signed, published, and declared by the said C. C. Shankle as his last will and testament, and that the jury were so led to believe. (c) That by said excerpts from the charge of the court, as aforesaid, the investigation and determination by the jury was limited to the sole question of the testamentary capacity of the testator at the time of the alleged execution of said instrument, and took away from the jury a determination of the question as to whether said instrument was ever legally executed by the said C. C. Shankle as his last will and testament as and in the manner required by the laws of this State, and deprived movant of his right to have that question determined by the jury." The language of these several excerpts from the charge is not entirely clear as relates to the first ground of the caveat, which sets up that the paper "was never signed, published, or declared" by the alleged testator, but, considered together, it does not show cause for reversal for any reason assigned.

■ The second special ground of the motion for a new trial complains that the trial judge instructed the jury as follows: "I charge you, gentlemen, that the burden is on the plaintiff, and the plaintiff in this case is the propounder of the will, Miss Bernice Crowder, to establish each and every material allegation in her petition, that is, the petition to probate the will, by a preponderance of the evidence;" and that afterward the judge instructed the jury "that in this case the burden is, in the first instance, on the propounder of the alleged will, as stated, Miss Crowder, to make out a prima facie case, showing the factum of the will and that at the time of its execution the testator apparently had sufficient mental capacity to make it, and in making it acted freely and voluntarily." The exceptions are: "(a) That said instructions were contradictory and tended to and did confuse and mislead the jury as to the extent of the burden of proof resting upon the pro-

pounder of said will; for that in the first excerpt above quoted they were instructed merely that the burden was on the propounder to establish the material allegations of the petition to probate the will (the only material allegations of that petition being that the testator died on March 27, 1930, leaving real and personal property in Walker County, after having made and published his last will and testament,—in other words, that the testator had made a will), while in the latter excerpt the jury were instructed that the burden was on the propounder, not only to show that the will was made, but that at the time of its execution the testator apparently had sufficient mental capacity to make it, and that in making it he acted freely and voluntarily. (b) That in thus giving two contradictory, confusing, and misleading rules of law, as applied to this case, the jury was left to follow either in their own discretion, and it is impossible to say which rule they applied in passing upon the facts and determining the issues in the case; that if they applied and followed the first rule given by the court, the effect thereof was to relieve the propounder entirely of the burden of showing that the testator apparently had sufficient mental capacity to make a will at the time it purports to have been executed, and that it was made freely and voluntarily, and, when taken in connection with the balance of the charge, placed the whole burden on the defendant of proving that the testator did not have sufficient testamentary capacity at the time the instrument offered for probate is claimed to have been executed." The instructions to which the exceptions relate were not erroneous for the reasons assigned.

■ The third special ground of the motion for a new trial complains of the charge: "You are the exclusive judges of the evidence and of the weight of evidence. In determining where the preponderance of the evidence lies, the jury may consider all the facts and circumstances of the case, the witnesses' manner of testifying, their intelligence, their means and opportunity of knowing the facts to which they testify, the nature of the facts to which they testify, and the probability or improbability of their testimony, and their interest or want of interest in the case. The jury may also consider the number of witnesses, though a preponderance is not necessarily with the greater number." One exception to this part of the charge is: "That while the court, in so charging the

jury with reference to a determination of where the preponderance of the evidence lies, undertook to give in charge the provisions of Code section 5732, bearing on such question, and did give in charge portions of said section of the Code, he wholly omitted therefrom the provision that the jury might also consider the personal credibility of the witnesses, so far as the same may legitimately appear from the trial; and that, having undertaken to charge on the question, it was the duty of the court to instruct the jury fully and completely with respect thereto, and not merely to charge certain portions of that Code section." This ground of exception is well taken, and the error in the charge is cause for a reversal. *Louisville & Nashville Railroad Co.* v. *Rogers,* 136 *Ga.* 674(3) (71 S. E. 1102); *Steele* v. *Graves,* 160 *Ga.* 120(5) (127 S. E. 465).

The fourth special ground of the motion for a new trial complains of the charge: "I charge you, gentlemen, that under the evidence in this case, as applied to the law, that there is only one question for your determination, and that is as to whether or not C. C. Shankle, at the time of the execution of this will, if it was executed, had sufficient mental capacity to execute a will; that is the sole question for your determination. On that question, gentlemen, I give you in charge section 3842 of the Civil Code of this State: An incapacity to contract may coexist with a capacity to make a will; the amount of intelligence necessary to enable the party to have a decided and rational desire as to the disposition of his property. His desire must be decided, in distinction from the wavering, vacillating fancies of a distempered intellect. It must be rational, in distinction from the ravings of a madman, the silly pratings of an idiot, the childish whims of imbecility, or the excited vagaries of a drunkard." Error is assigned as follows: "(a) That the portion of Code section 3842 as therein referred to, with respect to the vacillating fancies of a distempered intellect, the ravings of a madman, the silly pratings of an idiot, the childish whims of imbecility, or the excited vagaries of a drunkard, are wholly inapplicable under the evidence in this case, and introduced into the case questions not made by the pleadings or the evidence. (b) That the inclusion of such matters in the charge of the court, and particularly with reference to the sufficiency of mental capacity to make a will, tended to and did cause the jury to believe

that those were the only grounds upon which the probate to an alleged will could be denied, and tended to and did cause the jury to believe that in the absence of evidence showing or tending to show in the said C. C. Shankle the wavering, vacillating fancies of a distempered intellect, or the ravings of a madman, or the silly pratings of an idiot, or the childish whims of imbecility, or the excited vagaries of a drunkard, that the alleged will was entitled to probate." In view of all the facts in the case, the charge upon which error is assigned was not erroneous for any of the reasons stated.

■ The fifth special ground of the motion for a new trial complains of the charge: "I charge you, gentlemen, that. in case of doubt the reasonableness or unreasonableness of the disposition of his estate should have much weight in the disposition of the case." The exceptions are: "(a) That while the trial judge was evidently undertaking to instruct the jury in accordance with the provisions of Code section 3841, to the effect that in cases of doubt as to the extent of weakness of intellect, the reasonable or unreasonable disposition of his estate by a testator should have much weight in the decision of the question, he failed to submit that question clearly and fairly, and did not explain to the jury what was meant or what doubt should exist, or on what point doubt should exist in order to apply the rule as stated; and the charge as given had a doubtful meaning, and was calculated to and did lead the jury to believe that doubt on their part as to any point involved in the case would authorize them to apply the rule of reasonableness or unreasonableness of the disposition of his estate by the testator. (b) That under the doubtful and equivocal language used by the court, this charge was calculated to and did lead the jury to believe that if they were in doubt as to whether or not the instrument offered for probate had ever been executed by C. C. Shankle as his last will and testament as and in the manner required by law, that in resolving that question they could apply the rule given as to the reasonableness or unreasonableness of the disposition of his estate." The charge excepted to immediately followed this instruction: "I charge you, gentlemen, that a person has testamentary capacity, under this section, who understands the nature of a testament or will, that it is a disposition of property to take effect after death, and who is capable of remembering gen-

erally the property subject to disposition and the persons related. to him by the ties of blood and of affection, and also of conceiving and expressing by words, written or spoken, or by signs, or by both, any intelligible scheme of disposition. If the testator has sufficient intellect to enable him to have a decided and rational desire as to the disposition of his property, this will suffice." When considered in connection with the context, it is clear that the charge complained of was not erroneous for the reasons assigned.

■ The ruling announced in the eleventh headnote does not require elaboration.

*Judgment reversed. All the Justices concur, except Russell, C. J., who dissents.*

ATKINSON, J., concurs in the judgment, but dissents from the rulings in the fifth division of the decision.

RUSSELL, C. J. In view of the record in this case, the excerpts from the charge of the court, viewed in connection with the charge as a whole, are not sufficient grounds for the grant of a new trial; nor, under the facts, is the omission to state the well-settled rule that in considering the testimony the jury take into consideration the comparative credibility of the witnesses an error so material as to require a reversal of the judgment refusing a new trial.