## S06A0682. McCORMICK v. JEFFERS et al.
(637 SE2d 666)

SEARS, Chief Justice.

The appellant, John McCormick, appeals from a jury verdict upholding the probate of the will of his mother, Ms. Jean McCormick, and declining to set aside a quitclaim deed that his mother executed in favor of his sister, appellee Melinda Jeffers, at the same time the will was executed. The jury found, in particular, that Ms. McCormick was not under the undue influence of Jeffers when she executed the will and the deed. On appeal, Mr. McCormick contends, among other things, that his mother's will was not properly executed in that the witnesses to the will did not sign the will in her presence, and that the trial court erred in denying his motion for a directed verdict on that ground. He also contends that the evidence unequivocally shows that Ms. McCormick was under the undue influence of Jeffers when she executed the will and deed, and that he is therefore entitled to a new trial. Because we conclude that the will was not properly executed, we reverse the judgment admitting the will to probate. However, because we find some evidence to support the jury's finding that Jeffers did not unduly influence Ms. McCormick, we affirm the part of the judgment declining to set aside the deed.

1. OCGA § 53-4-20 (b) of the Revised Probate Code of 1998 provides that "[a] will shall be attested and subscribed in the presence of the testator by two or more competent witnesses." In the present case, Mr. McCormick contends that Jeffers, as the propounder of the will, failed to carry her burden to show that the witnesses to the will signed the will in the presence of the testator.[1] For the reasons that follow, we agree.

The evidence shows that the decedent signed her will while sitting in a chair in her bedroom, and that the two witnesses to the will were present in the bedroom when she did so. When one of the witnesses, Carol Ayers, was asked at trial if she had signed the decedent's will in her presence, she (Ayers) testified that she signed something in the decedent's presence in her bedroom and that other things were signed at the dining room table, but that she could not remember what she signed in the decedent's presence. Ayers also testified that the decedent could not see what was done at the dining room table, and that she and the other witness, Diane Goldman, signed the will at the same time. On cross-examination, Ayers admitted that, in a deposition, she had stated that she signed the will at the dining room table and that, when she did so, Ms. McCormick was in her bedroom.

Diane Goldman testified that she and Ayers witnessed the decedent sign her will in a chair in her bedroom, but that, because there was no place in the bedroom for Ayers and her to sign, they signed the will at the dining room table. Goldman testified that she saw Ayers sign at the dining room table. According to Goldman, the dining room table was about 15 feet from the bedroom door; that to her knowledge, Ms. McCormick never left the bedroom; and Ms. McCormick could not see the dining room table from the bedroom.

The notary who signed the will testified that she and the witnesses to the will signed the will at the dining room table and that Ms. McCormick was in the bedroom when they did so.

Finally, Ms. Jeffers testified that, although the decedent got up from her chair to use a bathroom that adjoined her bedroom while the witnesses were signing the will in the dining room, the decedent could not see what Ayers and Goldman were doing at the dining room table. Although the dissent correctly notes that Jeffers testified on re-direct that the decedent could see into the dining room when she got up to use the bathroom, Jeffers also testified immediately thereafter that, from where her mother was standing at that time, "there was no way that [the decedent] could see" the witnesses sign the will at the dining

---

[1] See *Heard v. Estate of Lovett*, 273 Ga. 111, 111 (538 SE2d 434) (2000) (discussing propounder's burden of persuasion).

room table and that the decedent could not, "unless she could look through a wall," see the witnesses sign the will. Jeffers added that she believed that the decedent saw Ayers sign one place on her will that Ayers initially missed. Jeffers stated that this happened after Ayers had gone back to the decedent's room after leaving the dining room table.

Based on the foregoing evidence, it is clear that Ms. McCormick did not see the witnesses sign her will and could not have done so without leaving her bedroom and walking toward the dining room. The question is whether, under these facts, the witnesses can be said to have signed the will "in the presence of the testator" within the meaning of OCGA § 53-4-20 (b) of the 1998 Probate Code.

OCGA § 53-4-20 of the 1998 Probate Code mirrors the language of the prior Probate Code regarding the requirement that witnesses sign the will in the presence of the testator.[2] We have interpreted this former statute to mean that, from the place where the testatrix is situated (such as sitting in a chair or lying in a bed) when the witnesses sign the will, she must be able to see the witnesses sign the will if she desired to do so without changing her place.[3] This test is referred to as the "line-of-vision" test,[4] and under this test, "[i]t is not necessary for the testator to have watched the witnesses sign, as long as the testator could have watched them sign."[5]

Some courts and the Restatement, however, have adopted a less formal test for determining when witnesses sign "in the presence" of the testator.[6] The Restatement refers to this test as the "conscious-presence" test. It

> recognizes that a person can sense the presence or actions of another without seeing the other person. If the testator and the witnesses are near enough to be able to sense each other's presence, typically by being within earshot of one

---

[2] See OCGA § 53-2-40 of the prior Code, which provided that "[a] will shall be attested and subscribed in the presence of the testator by two or more competent witnesses."

[3] See *Reed v. Roberts*, 26 Ga. 294, 300 (1858); *Hamlin v. Fletcher*, 64 Ga. 549, 554 (1880); *Gordon v. Gilmore*, 141 Ga. 347 (8) (80 SE 1007) (1914); *Glenn v. Mann*, 234 Ga. 194, 199 (214 SE2d 911) (1975); *Newton v. Palmour*, 245 Ga. 603, 605 (266 SE2d 208) (1980).

[4] Restatement 3d of Property: Wills & Other Donative Transfers, § 3.1, p. 177; Verner F. Chaffin, Execution, Revocation, and Revalidation of Wills: A Critique of Existing Statutory Formalities, 11 Ga. L. Rev. 297, 318-322 (1977). Contrary to the dissent's implication, this rule does not apply only to immobile testators. The rule arises from the language of the statute and has been applied to cases involving mobile testators, including one of the cases on which the dissent relies, *Glenn v. Mann*, 234 Ga. at 199-200.

[5] Restatement at 177. See also Chaffin at 318-322.

[6] Restatement at 177; Chaffin at 318-322; *In re Demaris' Estate*, 110 P2d 571, 580-585 (Or. 1941).

another, so that the testator knows what is occurring, the presence requirement is satisfied.[7]

Whatever the merits of this less rigid test, we do not have the authority to adopt it. The language of a revised Code section such as OCGA § 53-4-20 must be construed to be consistent with existing law unless a contrary intent is clear from the language of the new Code section.[8] Here, no such contrary intent appears. In fact, the reporter for the Revised Probate Code, who also was its primary drafter, has stated that "Code section 53-4-20 establishes requirements for the actual execution of a will and essentially maintains the previous Code's formalities."[9]

Thus, under OCGA § 53-4-20 (b), from where Ms. McCormick was situated in the bedroom or bedroom doorway, she must have been able to see the witnesses sign her will if she had the desire to do so. Because the evidence unequivocally establishes that she could not do so, any presumption of proper execution arising from the will's attestation clause has been rebutted by clear proof that the will was not properly executed,[10] and the judgment approving the will must be reversed.

2. Mr. McCormick contends that the trial court erred in permitting Jeffers to testify, over his objection, regarding gifts that Ms. McCormick made to Mr. McCormick during her life. However, because other witnesses testified to these gifts, without objection, Mr. McCormick cannot show harm from any error alleged to have occurred from Jeffers's testimony.[11]

3. Contrary to Mr. McCormick's contention, we conclude that the trial court did not err in admitting evidence of declarations made by the testator. The evidence in question was relevant to the issue of undue influence and to explain the testator's disposition of her property.[12]

---

[7] Restatement at 177.

[8] *Killearn Partners, Inc. v. Southeast Properties*, 279 Ga. 144, 147 (611 SE2d 26) (2005).

[9] See Mary F. Radford and F. Skip Sugarman, Georgia's New Probate Code, 13 Ga. St. U. L. Rev. 605, 673 (1997).

[10] See *Newton v. Palmour*, 245 Ga. 603, 605 (266 SE2d 208) (1980) (an attestation clause raises presumption that a will was legally executed, but the presumption may be rebutted by clear proof to the contrary). The two cases on which the dissent relies for concluding that there is evidence supporting the verdict in the present case are cases in which there was evidence that the testator could have seen the witness when the witness signed the will, see *Glenn v. Mann*, 234 Ga. at 195-196, 200-202; *Lamb v. Girtman*, 26 Ga. 625, 626 (1859).

[11] *Sanders v. State*, 251 Ga. 70, 76-77 (303 SE2d 13) (1983).

[12] *Johnson v. Sullivan*, 247 Ga. 663, 665-666 (278 SE2d 640) (1981); *Shankle v. Crowder*, 174 Ga. 399, 402-404 (163 SE 180) (1931).

4. Mr. McCormick contends that the trial court erred in not granting him a new trial, as, according to Mr. McCormick, the evidence, without dispute, showed that the deed was the result of the undue influence of Jeffers.

If a party moves for a new trial after a jury verdict on the ground that the verdict is against the weight of the evidence, and the trial court denies the motion, this Court, on review, must affirm that denial if there is any evidence to support the verdict.[13] Moreover, "[f]or undue influence to be sufficient to invalidate a [deed], it must amount to deception or force and coercion that operates on the [grantor] when she is executing [the deed] so that the [grantor] is deprived of free agency and the will of another is substituted for that of the [grantor]."[14] In the present case, even assuming there was a confidential relationship between Jeffers and Ms. McCormick that gave rise to a rebuttable presumption of undue influence,[15] there was some evidence to rebut that presumption, and some evidence on which the jury could have relied to conclude that Ms. McCormick's deed was not the result of undue influence by Jeffers.

In this regard, several witnesses testified that they had known Ms. McCormick for four years or longer; that her mental abilities had not declined over the years these witnesses had known her; that her mind was clear and sharp on the day she executed the will and deed; that she signed the will and deed of her own free will; and that Ms. McCormick was not under any duress when she executed the will and deed. In addition, appellee Anne Snider[16] testified that Jeffers had "absolutely not" influenced Ms. McCormick's disposition of her property, and that, in fact, Ms. McCormick had influenced Jeffers, as Ms. McCormick was a strong, powerful, opinionated woman and had her full mental capacities until the day of her death.

Because the foregoing constitutes some evidence by which the jury could have found that Ms. McCormick was not under the undue influence of Jeffers when she executed her will and deed, we are not authorized to reverse the trial court's denial of Mr. McCormick's motion for new trial.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Hunstein, P. J., Carley and Hines, JJ., who concur in part and dissent in part.*

---

[13] *Maddox v. Maddox*, 278 Ga. 606, 607 (604 SE2d 784) (2004).

[14] *Smith v. Liney*, 280 Ga. 600, 601 (631 SE2d 648) (2006). Accord *Thomas v. Garrett*, 265 Ga. 395, 397 (456 SE2d 573) (1995) ("Undue influence is such 'as amounts either to deception or to force and coercion which destroys free agency.' ").

[15] See *White v. Regions Bank*, 275 Ga. 38, 39-40 (561 SE2d 806) (2002) (describing circumstances under which a presumption of undue influence arises).

[16] Snider is the sister of Mr. McCormick and Ms. Jeffers.

HUNSTEIN, Presiding Justice, concurring in part and dissenting in part.

I respectfully dissent to the majority's opinion. "It is the duty of this court to construe the evidence most strongly in support of a verdict which has been approved by the trial judge." *Associated Mutuals, Inc. v. Pope Lumber Co.*, 200 Ga. 487 (37 SE2d 393) (1946). In regard to the denial of a motion for directed verdict, the rule is that this Court "must affirm if there is any evidence to support the jury's verdict, and in making this determination, we must construe the evidence in the light most favorable to the prevailing party. [Cit.]" *Rabun County v. Mountain Creek Estates*, 280 Ga. 855, 858 (2) (632 SE2d 140) (2006). Accord *Holland v. Holland*, 277 Ga. 792 (596 SE2d 123) (2004). In cases challenging whether the attestation of a will occurred within the presence of the testator, the courts must bear in mind that "[a] proper attestation clause to a duly signed and attested will raises a presumption that the will was legally executed, [cit.]" and that this presumption can only be rebutted by "clear proof to the contrary." *Newton v. Palmour*, 245 Ga. 603, 605 (266 SE2d 208) (1980).

Despite these well-established rules, the majority refuses to acknowledge that the presumption that the testator's will was legally executed was not rebutted because the testimony of the testator's daughter, Jeffers, constitutes some evidence to support the jury's verdict. The majority focuses on the fact that the attesting witnesses, Ayers and Goldman, failed to see the testator as they signed the will. The jury, however, was entitled to rely on Jeffers' testimony about what she observed when the pertinent events occurred. She testified that although the testator was sitting in a chair in her bedroom when Ayers and Goldman left to sign the will at the dining room table, some 15 feet from the bedroom, the attestation was still in progress when the testator called to Jeffers and Jeffers found her standing in the doorway to the bedroom with her walker. While on cross and recross examination Jeffers testified that the testator could not see what the attesting witnesses were doing at the dining room table from the bedroom doorway, the transcript reveals that on redirect Jeffers apologized for her nervousness and testified that her mother could see into the dining room from the bedroom doorway. The trial court allowed this testimony over defense counsel's objection that Jeffers had already answered that the testator could not see the table, stating that the jury could "give the testimony such weight and credence as it believes it's entitled to."

Although Jeffers' testimony with regard to the visibility of the attestation of the will and the circumstances thereof "was equivocal and occasionally self-contradictory, the credibility of the parties was for the jury ([Cit.])." *Glisson v. Glisson*, 265 Ga. 239 (2) (454 SE2d 508)

(1995). Because of this evidence, there is no "clear proof to the contrary" to rebut the presumption that the testator's will was legally executed. See *Newton*, supra, 245 Ga. at 605, where this Court recognized that a jury could find a will was legally executed despite evidence the testator was bedridden, the subscribing witnesses signed in a hallway outside the bedroom, and the subscribing witness averred that "because of the way the bed was positioned, she did not see how the testat[or] could have seen" the attestation. Id. at 604.

Additionally, a review of cases in Georgia and other foreign jurisdictions that follow the line-of-vision test reveals that the majority's ruling is erroneously premised on factually distinguishable cases applying the test to "testators who were confined to bed and were physically unable to move when the witnesses signed." *Glenn v. Mann*, 234 Ga. 194, 199-200 (2) (214 SE2d 911) (1975). Although citing to *Glenn*, see Majority Op., p. 266, fn. 3, the majority fails to acknowledge the factual difference *Glenn* recognized between bedridden, immobile testators and those testators who were physically able to move when the witnesses attested the will. This Court has recognized this distinction nearly as long as it has applied the line-of-vision test itself. See *Lamb v. Girtman*, 26 Ga. 625 (1859), decided less than a year after *Reed v. Roberts*, 26 Ga. 294 (1858). In *Lamb*, a case involving a testator who was not in the same room as the witnesses but had the ability to move about, this Court held it was for the jury to determine whether the witnesses attested the will in the presence of the testator because the testator was mobile and might have been able to witness the signing. Other jurisdictions have adopted similar rules. See *In re Fuller's Will*, 189 N.C. 509 (1925) ("[a] will is well attested by subscribing witnesses when, though not in the same room with the testator, they are in such a situation that the testator either sees *or has it in his power to see* that they are subscribing" (emphasis supplied)); *Moore v. Moore*, 49 Va. 307 (1851). See also Annotation, What Constitutes the Presence of the Testator in the Witnessing of his Will, 75 ALR2d 318. I thus cannot agree with the majority that a rule promulgated in cases involving bedridden, immobile testators should be applied in the same manner to cases where the testator is not bedridden or immobile. I find it particularly inapplicable in this case, where the evidence shows that the testator was not only able to physically walk around, she was actually seen having walked within feet of the attesting witnesses at the very time they were signing her will.

I would hold in this case, as the Court did in *Glenn*, supra, 234 Ga. at 202 (2), that in determining whether a will was signed in the presence of the testator,

"(t)here is no unvarying and universal rule which can be laid down; each case must be determined by its own circumstances. That the will shall be signed in the presence of the testator, was to prevent a fraud's being perpetrated upon [her] by substituting another for the true will." Under the circumstances of this case, [appellant's] contention that [Ayers and Goldman] did not sign in the testator's presence cannot be sustained.

Accordingly, I dissent to the majority's reversal of the trial court's denial of appellant's motion for directed verdict. In the absence of "clear proof to the contrary," *Newton*, supra, 245 Ga. at 605, supra, I would hold that Jeffers' testimony regarding what the testator could see plus the testator's presence with her walker in the bedroom doorway, together with the presumption that the will was legally executed, support the trial court's judgment admitting testator's will, thereby giving full effect to her intentions regarding the disposition of her property after her death.

I am authorized to state that Justices Carley and Hines join this dissent.

DECIDED NOVEMBER 20, 2006.

*Capers, Dunbar, Sanders & Bruckner, Emory F. Sanders, Sr., Ziva P. Bruckner, Amanda N. Medlin*, for appellant.
*Johnston, Wilkin & Williams, William J. Williams*, for appellees.