A09A1922. SCHAFFER et al. v. FOX et al.

(693 SE2d 852)

ANDREWS, Presiding Judge.

The Fox brothers (Alfred C. Fox; Leonard D. Fox; William R. Fox; Richard O. Fox; and Steven T. Fox) sued to set aside quitclaim deeds given by their mother (Emily M. Fox) to her daughter (Elaine Fox Schaffer) and her grandson (Harry M. Schaffer) on the basis that the deeds were the product of undue influence exerted on Mrs. Fox by the Schaffers. The Schaffers appeal from a jury verdict setting aside the deeds. We affirm.

1. Viewing the evidence in the light most favorable to the verdict, there was evidence to support setting aside and invalidating the deeds as the product of undue influence on Mrs. Fox when she executed the deeds.

"For undue influence to be sufficient to invalidate a deed, it must amount to deception or force and coercion that operates on the grantor when she is executing the deed so that the grantor is deprived of free agency and the will of another is substituted for that of the grantor." (Citation and punctuation omitted.) *McCormick v. Jeffers*, 281 Ga. 264, 268 (637 SE2d 666) (2006). Evidence showing only the opportunity to exercise undue influence is not sufficient. *Cook v. Huff*, 274 Ga. 186 (552 SE2d 83) (2001).

> Undue influence may take many forms and may operate through diverse channels. Moreover, its existence and effect can rarely be shown other than by circumstantial evidence. Therefore, when a [deed] is contested on the ground of undue influence, the attack may be supported by a wide range of testimony. . . . [A]ll of the circumstances including the conduct and demeanor of the parties with respect to each other, their comparative ages and mental capacity, and especially any physical and mental infirmity due to advanced age of the [grantor], may be taken into consideration.

(Citations and punctuation omitted). Id. at 187. "[T]he question of whether a [deed] is the product of undue influence is generally for the factfinder." Id. at 186-187.

By the two quitclaim deeds at issue, Mrs. Fox deeded all of her real property to her adult daughter, Elaine Schaffer, and her adult grandson, Harry Schaffer. The Fox brothers are Mrs. Fox's remaining five adult children. The first deed was executed on March 22, 2004, and granted a rental house owned by Mrs. Fox to the Schaffers, and the second deed was executed on November 6, 2004, and granted Mrs. Fox's residence and the 14.5 acres on which it was located to the Schaffers. Mrs. Fox turned 83 years of age in June 2004, and was diagnosed in September 2004, with terminal lung cancer from which she died in January 2006. Evidence showed that one of the Fox brothers (William) has a mental disability and has lived all of his life with his parents, who took care of and provided for him. After Mr. Fox died in 1998, Mrs. Fox repeatedly expressed her desire that, after her death, her estate be used to provide for her son, William, and that William have her residence to live in for the rest of his life. To that end, Mrs. Fox consulted with an attorney, who prepared a will at her direction that contained provisions placing her residence and rental

house and most of her personal property in a trust for the benefit of William Fox with Elaine Schaffer as the trustee. Although Mrs. Fox received a draft of this will in January 2004, she did not execute it. Using the attorney-prepared will as a guideline, Harry Schaffer prepared a will for Mrs. Fox which also contained provisions placing her residence, rental house, and personal property in a trust for the benefit of William Fox with Elaine Schaffer as the trustee. Mrs. Fox executed the Schaffer-prepared will on March 13, 2004. On March 22, 2004, Mrs. Fox executed a quitclaim deed prepared for her by Harry Schaffer. By this deed, Mrs. Fox deeded her rental house to the Schaffers, thus removing the rental house from the trust she created for William in the will she executed just nine days earlier. After Mrs. Fox was diagnosed with terminal lung cancer in September 2004, Harry Schaffer prepared another quitclaim deed which Mrs. Fox executed on November 6, 2004, two days before she was scheduled to begin chemotherapy. At that point, Mrs. Fox had recently undergone surgery to discover the cancer and was taking powerful pain medication. By this deed, Mrs. Fox deeded her residence to the Schaffers, thus stripping the bulk of the assets from the trust she created for William's benefit in the March 2004 will. Virtually nothing remained in the trust after Mrs. Fox's death because her savings contained in joint bank accounts passed directly to Elaine Schaffer. In one case, a money market account in excess of $27,000 created by Mrs. Fox in her name jointly with Elaine Schaffer and William Fox was closed by Ms. Schaffer after Mrs. Fox's death and reopened as an account in the names of Elaine and Harry Schaffer. Evidence showed that, even after Mrs. Fox deeded all her real property to the Schaffers, she continued to act as if she owned it by paying for repairs and insurance on the property. This evidence contradicted testimony given by Harry Schaffer that Mrs. Fox deeded the rental house to him and his mother because she was tired of paying the insurance and other expenses.

In addition to the above evidence, the Fox brothers produced evidence that Elaine Schaffer dominated and belittled Mrs. Fox in her later years and manipulated her by telling her that she was the only one Mrs. Fox could trust to take care of William after she died. Evidence showed that, after Mrs. Fox executed the will with her real and personal property in trust for William's benefit, Elaine Schaffer told Mrs. Fox that, if everything was put in her (Elaine's) name, she could prevent her brothers from putting her in a nursing home, selling her property, and putting William out on the street. Although the Schaffers testified that one of Mrs. Fox's sons told her that is what he intended to do, it was up to the jury to determine the credibility of the witnesses. There was evidence sufficient for the jury to conclude that the quitclaim deeds were invalid because they

were executed by Mrs. Fox as the result of undue influence exerted on her by the Schaffers.

2. The Schaffers claim that the trial court erred by allowing testimony from an attorney who prepared two prior wills for Mrs. Fox — a will prepared in 2003 and executed by Mrs. Fox which contained life estate provisions for the benefit of William Fox, and a will prepared in January 2004 not executed by Mrs. Fox which contained trust provisions for William's benefit. The trial court overruled the Schaffers' objection that the attorney's testimony as to statements made to him by Mrs. Fox regarding the wills should be excluded as privileged communications.

The rule that communications between an attorney and a client (even a deceased client) are privileged cannot be invoked for the benefit of persons who are strangers to the attorney-client relationship. *White v. Regions Bank*, 275 Ga. 38, 41 (561 SE2d 806) (2002). Elaine Schaffer was the named executor and Harry Schaffer was the substitute executor in both of the prior wills. Generally, a will's executor while defending an action seeking to invalidate the deceased testator's will is not a stranger to the relationship between the attorney who prepared the will and the testator-client. *Spence v. Hamm*, 226 Ga. App. 357, 358-359 (487 SE2d 9) (1997). Under those circumstances, the executor stands in the place of the deceased and is entitled to invoke the attorney-client privilege. Id. In defending claims that they obtained the two quitclaim deeds by exerting undue influence on Mrs. Fox, the Schaffers were not acting in the capacity of an executor standing in the place of Mrs. Fox and defending her will. Rather, they were acting as strangers to the attorney-client relationship, and the trial court did not err by overruling their objection. Moreover, the attorney's general testimony that Mrs. Fox told him she was concerned about taking care of William was merely cumulative of the specific provisions in the wills, admitted without objection, expressing Mrs. Fox's concern.

3. The Schaffers contend that the trial court erred by failing to give their requested instruction to the jury that for undue influence to be sufficient to invalidate a deed it must be operating on the grantor at the time the deed was executed. See *McCormick*, 281 Ga. at 268. The trial court instructed the jury that:

A grantor is a person who transfers property by deed. A grantee is the person to whom the property is transferred by a deed. And a deed is a document under seal that states a transfer of property. A deed obtained through the use of undue influence by the grantee exerted upon the grantor will be set aside in equity.

The charge as a whole informed the jury that undue influence sufficient to set aside or invalidate a deed must have influenced the grantor at the time the grantor transferred the property to the grantee by deed. The jury instructions were sufficient to convey the principle that undue influence must have been operating on the grantor at the time the deed was executed. See *Sheppard v. Broome*, 214 Ga. 659 (107 SE2d 219) (1959). There was no error.

4. The Schaffers contend that the trial court erred by consolidating this action with a separate pending action in which the Fox brothers seek to prove that the will Mrs. Fox executed on March 13, 2004, is invalid because Mrs. Fox executed it as a result of undue influence or fraud exerted on her by the Schaffers.

The record shows that the trial court entered an order granting the Fox brothers' motion to consolidate the actions over the Schaffers' objection that the actions could not be consolidated under OCGA § 9-11-42 (a) without their consent. After entering this order, the trial court vacated it and entered a second order recognizing that consolidation under OCGA § 9-11-42 (a) required consent, and that the Schaffers did not consent. *Ford v. Uniroyal Goodrich Tire Co.*, 267 Ga. 226-230 (476 SE2d 565) (1996). Nevertheless, the second order consolidated the actions on the basis that the trial court had the authority to do so under OCGA § 23-4-1. After the second consolidation order was entered, the Schaffers and the Fox brothers entered into a consolidated pre-trial order signed by the trial court which controlled only the trial of the present action seeking to invalidate the two quitclaim deeds. On the day the trial commenced in the present action, the trial court entered an order stating that, although it had technically consolidated the two actions, "[w]ith the agreement of the parties and with the court's approval, these two civil actions will be tried separately" with the present action being tried first by a jury and the action concerning the will to be tried later by the court sitting without a jury. The procedure agreed to by the parties did not amount to consolidation of the actions under OCGA § 9-11-42 (a). See *Ford v. Uniroyal Goodrich Tire Co.*, 267 Ga. at 226-230. Under the agreement, the Schaffers waived any claim that the actions were improperly consolidated without their consent.

*Judgment affirmed. Miller, C. J., and Barnes, J., concur.*

DECIDED MARCH 22, 2010 —
RECONSIDERATION DENIED APRIL 8, 2010 —

*Patrick W. McKee*, for appellants.

*Michael E. Sumner, Amanda L. Caldwell*, for appellees.