## GALE *v.* THE STATE.

1. Where on the trial of a criminal case the main and indispensable witness for the State was examined in chief, and during the cross-examination collapsed physically and had to be taken from the court-room, there was no error in having her examined by a physician, and, upon his evidence, taking a recess until the next day.
2. Upon reassembling and hearing testimony as to the condition of the witness, which convinced the presiding judge that such witness was unable to return to the court-room and testify, and that it was uncertain when it would be possible for her to do so, there was no error, after having the jurors retire, in stating to counsel for the accused, in presence of the latter, that the judge would grant a mistrial, if the accused so desired; nor was there error, upon the statement of counsel for the accused that he did not desire a mistrial, in refusing to strike out the evidence which the witness had given, or direct a verdict of not guilty.
3. After the trial proceeded, there was no error in leaving the jury to determine the credit which should be given to the evidence of the witness, in view of the circumstances and the partial cross-examination.
4. Under the evidence, voluntary manslaughter was not involved in the case, and there was no error in failing to instruct the jury on that subject.
5. In the trial of a criminal case on an issue of guilty or not guilty, it is ordinarily inapt to give in charge the provisions of section 5146 of the Civil Code, in regard to what may be considered by the jury in determining where the preponderance of evidence lies. But so doing will not necessitate a reversal, if, in the light of the evidence and the entire charge, the instruction on that subject appears to be harmless.

6. The evidence sustained the verdict, and none of the other grounds of the motion for a new trial require a reversal.

NOVEMBER 16, 1910

Indictment for murder. Before Judge Conyers. Glynn superior court. June 4, 1910.

*J. D. Sparks* and *Edwin W. Dart,* for plaintiff in error.

*H. A. Hall, attorney-general, J. H. Thomas, solicitor-general,* and *J. T. Colson,* contra.

LUMPKIN, J. Prince Gale was convicted of the murder of Calvin Brown, and, upon recommendation of the jury, was sentenced to life imprisonment. He moved for a new trial, which was refused, and he excepted.

1. Pending the cross-examination of a witness for the State, she collapsed physically and had to be taken from the court-room. Just before she was removed from the stand she did not answer several questions of the cross-examining attorney. This, however, was apparently the result of her condition, rather than of contumaciousness. The presiding judge endeavored to compel her to answer, but she seemed to be unable to do so. The judge had a physician called, who examined the condition of the witness and reported that she would be unable to testify further that day. This was about the middle of the afternoon, and the court took a recess until next morning. On the reconvening of court next day the witness was not present. The testimony of the physician and other evidence was heard, from which the presiding judge became satisfied that the witness was still unable to testify, and that it was entirely uncertain whether she would be able to do so. The judge then caused the jury to retire from the court-room, and stated to counsel for defendant, in the hearing of the latter, that a mistrial would be granted, if the defendant desired it. Defendant's counsel stated that a mistrial was not desired, and the case proceeded, the judge allowing the evidence of the witness, as far as given, to stand, and refusing to rule it out. A number of the grounds of the motion for a new trial arise out of this incident, an account of which appears in a note appended by the judge to the motion.

Undoubtedly the right of cross-examination is a valuable right; and if it be improperly denied, a reversal must result. There is authority in England to the effect that if a witness dies, or becomes incapable of being further examined, at any stage of his

examination, the evidence given before he became incapable is good; but it has been said that in this country the rule is different, where there has been no opportunity for cross-examination. Clark's Crim. Proc. 549; Stephen's Dig. Ev. (Beer's ed.) 434; Rex v. Doolin, 1 Jebb. Cr. Cas. 123; 8 Enc. Pl. & Pr. 99. · In 2 Wigmore on Evidence, § 1390, p. 1742, it is said: "Where the witness' death or lasting illness would not have intervened to prevent cross-examination but for the voluntary act of the witness himself or the party offering him—as, by a postponement or other interruption brought about immediately after the direct examination, it seems clear that the direct testimony must be struck out. Upon the same principle, the same result should follow where the illness is but temporary and the offering party might have reproduced the witness for cross-examination before the end of the trial. But, where the death or illness prevents cross-examination under such circumstances that no responsibility of any sort can be attributed to either the witness or his party, it seems harsh measure to strike out all that has been obtained on direct examination. Nevertheless, principle requires in' strictness nothing less. The true solution would be to avoid any inflexible rule, and to leave it to the trial judge to admit the direct examination so far as the loss of cross-examination can be shown to him to be not in that instance a material loss. Courts differ in their treatment of this difficult situation; except that, by general concession, a cross-examination begun but unfinished suffices if its purposes have been substantially accomplished. Where, however, the failure to obtain cross-examination is in any sense attributable to the cross-examiner's own consent or fault, the lack of cross-examination is of course no objection,—according to the general principle (ante, § 1371) that an opportunity, though waived, suffices." This is quoted somewhat at length on account of the clearness with which the author has stated his views, and also because of the collection of authorities in the note, among them being Randall v. Atkinson, 30 Ont. 242; Scott v. McCann, 76 Md. 47 (24 Atl. 536); Fuller v. Rice, 4 Gray (Mass.), 343; Lewis v. Ins. Co., 10 Gray (Mass.), 508, 511; People v. Kindra, 102 Mich. 147, 151 (60 N. W. 458). See also 1 Gr. Ev. (16th ed.) § 163 c, d, p. 280.

In People v. Cole, 43 N. Y. 508, where, on a trial for larceny, the wife of the prosecutor, having given material evidence on behalf of the people on her direct examination, immediately went into con-

23

vulsions before the prisoner had an opportunity to cross-examine her, and so remained until the close of the trial, it was held to be error to permit her evidence to go to the jury. This case is often cited. From the report of facts it appears that counsel for the defendant called for the production of the witness in court for examination, moved that her evidence be stricken out, asked a postponement of the trial until she should recover, and asked that the prisoner be discharged. Each of these motions was overruled.

In Sturm *v.* Atlantic Mutual Ins. Co., 63 N. Y. 77, the same court said: "It may be taken as the rule, that where a party is deprived of the benefit of the cross-examination of a witness, by the act of the opposite party, or by the refusal to testify or other misconduct of the witness, or by any means other than the act of God, the act of the party himself, or some cause to which he assented, that the testimony given on the examination-in-chief may not be read." See also Bradley *v.* Mirick, 91 N. Y. 293; Hewlett *v.* Wood, 67 N. Y. 394. We will not stop to discuss the difference between common-law and equity practice.

It is clear, that, while the right of cross-examination is not to be violated, yet it may be waived expressly, or by the conduct of the party entitled to it; and that (in the language of Prof. Wigmore) if "the failure to obtain cross-examination is in any sense attributable to the cross-examiner's own consent or fault, the lack of cross-examination is of course no objection."

2. When the witness collapsed during the progress of the cross-examination, there was no error in having her removed from the stand and examined by a physician, and suspending the trial until the next day, upon hearing his testimony in regard to her condition. When court reconvened next day, there was no error in hearing evidence touching her condition, she not being present; nor, under the evidence adduced, can we say that the court did not decide properly that she was unable to return to the court-room and testify, and that it was uncertain when she would be able to do so. She was the principal witness for the State, being an eye-witness to the commission of the homicide. The court was thus, in the expressive language of a distinguished American, confronted with a condition, not a theory. It was impracticable to suspend the case indefinitely. No motion for a postponement was made by counsel for the defendant, as was done in People *v.* Cole, supra.

Counsel for the accused asked that the entire previously given evidence of the witness should be ruled out, and that a verdict be directed finding the accused not guilty, the witness being the only one introduced by the State in chief. The presiding judge recognized the right of cross-examination, and did not desire to cut off such right or to force the accused to proceed with the trial under such circumstances. What appeared to him to be the only practicable method of accomplishing that result was to declare a mistrial, if the defendant desired it. This would have resulted in starting the trial afresh at a later date. If the State could not then have produced the witness, the consequence of the inability would have fallen upon it. If it did produce her, she would have been subject to cross-examination. But this was not what the defendant desired. His counsel asked for no postponement, and announced that he did not want a mistrial. What he evidently wanted was for the case to terminate, when it was impossible to cross-examine the witness, to have the main evidence for the State ruled out, and for an acquittal to result because of the illness of the witness.

The severity of punishment for felonies which was inflicted in England at one time (when they were generally punishable by death) begat in practice certain technical loopholes of escape for criminals, in no way affecting the merits of the case. This has, to some extent at least, passed away, save where rules of procedure have been crystallized by constitutional provisions, or legislative enactments, or by the decisions of courts of last resort. But we think that neither in England nor in America have the decisions on the subject of interruption of an examination by sickness or death carried the rule to the extent contended for in this case. Every person accused of crime is entitled to a fair and impartial trial, according to the rules of law. But an accused person is not entitled to be set free, regardless of his guilt or innocence, because of a providential interference with the cross-examination of the State's principal witness, and the unwillingness of the defendant to accept a reasonable method of securing a complete cross-examination.

When, through his counsel, the accused announced that he did not want a mistrial, which appeared from the evidence to be the only method by which the witness could be again produced and examined, we think that he waived the right, or at least that his conduct was such as to obstruct the possibility of its exercise. Under the cir-

cumstances, the court did not err in refusing to strike the evidence which had been given by the witness for the State, and to direct a verdict for the accused.

3. After the trial proceeded, with the evidence of the witness remaining in, the judge correctly ruled that it was for the jury to determine the weight to be given to it. The case was not one for the exclusion of a witness as incompetent to testify.

4. The case made by the evidence for the State was one of murder. It tended to show that the accused, on account of an insult offered to his mother, went to the home of Calvin Brown, called him out, and shot him to death. The defense was that the accused sought to settle the dispute, made no assault, and had no intention to kill Brown; that the latter saw who it was, stepped back into the house and obtained his gun, advanced on the accused, and was seeking to kill him, when the latter shot in self-defense. The killing was murder or justifiable homicide. Voluntary manslaughter was not involved, and there was no error in failing to charge in regard to it.

5. It is not ordinarily apt, in the trial of a criminal case, to give in charge to the jury the provisions of section 5146 of the Civil Code, in regard to what may be considered by the jury in determining where the preponderance of the evidence lies. But doing so will not in all cases require a reversal, if, in the light of the evidence and the entire charge, the instruction on that subject was harmless. *Pressley* v. *State*, 132 *Ga.* 64 (63 S. E. 784).

6. If there was any slight inaccuracy of language in defining justifiable homicide, it was not such as could have hurt the accused. None of the other grounds of the motion require a special discussion or a reversal.

The evidence was sufficient to authorize the verdict, and there was no error in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur.*