23173. ELLER *v.* THE STATE.

DECIDED JANUARY 5, 1934.

*Wright & Covington, John D. & E. S. Taylor, Porter & Mebane,* for plaintiff in error.

*James F. Kelly, solicitor-general, J. Ralph Rosser,* contra.

MACINTYRE, J. The indictment in this case contains two counts, the first charging that on September 30, 1931, in Chattooga county, Lee Eller and Roy Baker did "verbally accuse H. F. McWhorter with the crime and offense of unlawfully opening United States mail, with the intent then and there to extort three hundred dollars in money of the value of three hundred dollars, which amount the said accused then and there demanded and did then and there threaten to prosecute said H. F. McWhorter unless the amount so then and there demanded was paid them. . ." The second count charges that "on the day and date and in the county aforesaid" the same defendants "did then and there . . verbally accuse J. F. McWhorter with the offense of forgery of the name of Floyd Thompson on a certain check, the exact description of which is unknown to the grand jury, with intent to extort from him, the said H. F. McWhorter, the sum of three hundred dollars in money of the value of three hundred dollars, and they, the said accused, did then and there threaten to prosecute the said H. F. McWhorter for forgery unless the amount then and there demanded of him was then and there paid." The jury found a general verdict of guilty

against the defendants, and Lee Eller excepted to the judgment overruling his motion for a new trial.

Special ground 1 complains of the following charge of the court: "In determining what weight you may attach to the testimony of any witness, you may look to his or her appearance on the stand; take into consideration their manner of testifying, their interest or want of interest in the case, their feeling, prejudice, or bias, if anything of the sort has been made to appear, together with their opportunity of knowing the facts about which they testify." This excerpt is assigned as error "for the reason that said charge . . failed to give to the jury the entire principle of law applicable to the weight to be given by them to the evidence of a witness, in that it omitted . . the question of the personal credibility of the witness so far as the same might legitimately appear upon the trial of said case." To sustain this contention, counsel rely upon the case of *Shankle* v. *Crowder*, 174 *Ga.* 399 (8), 410 (163 S. E. 180), where the Supreme Court held that having undertaken to charge the rule for determining where the preponderence of evidence lies, as laid down in the Civil Code (1910), § 5732, the trial judge committed reversible error in omitting the provision that the jury may consider the witness's "personal credibility, so far as the same may legitimately appear from the trial." While the "preponderance-of-evidence rule" is always applicable in a civil case, it is inappropriate in a criminal case, where the State is required to prove the guilt of the accused beyond a reasonable doubt. *Williams* v. *State*, 125 *Ga.* 302 (3), 306 (54 S. E. 108); *Helms* v. *State*, 138 *Ga.* 826 (5, 6) (76 S. E. 353). It is ordinarily inapt to charge § 5732 in a criminal case, but so doing is not reversible error if the instruction appears to be harmless. *Gale* v. *State*, 135 *Ga.* 351 (5) (69 S. E. 537). In passing, it may be observed that while in the instant case the judge charged some of the ways of determining the credibility of a witness, as laid down in § 5732, supra, he carefully refrained from saying or intimating that the defendant's guilt or innocence was to be determined by the preponderance of the evidence. It is also true that immediately after giving the jury the instruction complained of, the court charged them as follows: "If you find there are material conflicts in the evidence, or conflicts about material matters, you ought to endeavor to reconcile all such conflicts, if you can do so, so as to make each and every witness speak the truth,

and without imputing perjury to any witness, the law presuming they are all honest and tell the truth, until the contrary appears by proof; but if, after an honest effort to so reconcile the evidence, you can not do so, then you should believe that which to you is the most reasonable and credible, that which, as honest and conscientious jurors wanting to do right and render a just verdict, you believe to be the truth of the alleged transaction, viewing it in the light of all the surroundings as detailed from the witness stand, and in the light of human conduct, or reason and common sense." We hold that the ground discloses no reversible error.

Special ground 2 complains of the following charge of the court: "You will readily see from reading this section that it is not necessary or incumbent upon the State to show that the person sought to be blackmailed under this section was not guilty of an offense or a crime, but it is only necessary for the State to show that the person who was attempting to blackmail (and of course these are questions entirely for you) *was threatening to accuse another of a crime or offense.* As stated, it is immaterial whether the person sought to be blackmailed was guilty or not guilty. The question for the jury to determine is whether or not *he was accused by the person who was attempting to blackmail him,* if there was any such conduct—if he was accused of a crime or of an offense; and I charge you that must be done with the intent to extort money or other thing of value. It is immaterial as to whether or not the money was actually extorted or paid, the question being as to whether it was done with that intent or not." The gist of the assignment of error is that the first count of the indictment charges merely that the defendants *accused* McWhorter of the offense of unlawfully opening the United States mail, and the court erred in instructing the jury that it was only necessary for the State to show that the defendants were *threatening to accuse another of a crime.* The indictment was drawn under section 118 of the Penal Code (1910), which reads: "If any person shall, verbally, or by printing or writing, accuse another of a crime or offense, or expose or publish any of his or her personal or business acts, infirmities, failings, or compel any person to do any act, or to refrain from doing any lawful act, against his will, with intent to extort money or other thing of value from any person, or if any person shall attempt or threaten to do any of the acts above enumerated, with the intent to extort money or other

thing of value, such person shall be guilty of blackmail, and shall be punished as for a misdemeanor . . ." When fairly construed, we think that the indictment charges that the defendants verbally accused another of a crime, with the intent to extort money from him, and threatened to prosecute him unless the money demanded was paid. We do not think that the indictment charges the defendants with an attempt or threat to accuse McWhorter of a crime. For a case where the indictment charged that the defendant both accused another of a crime and threatened to accuse another of a crime, see *Cook* v. *State,* 22 *Ga. App.* 770, 772 (97 S. E. 264). For a discussion of an indictment drawn under section 118 of the Penal Code (1910), see *Chunn* v. *State,* 125 *Ga.* 789, 790 (54 S. E. 751), where it was held that the gravamen of the offense is the "intent to extort money or other thing of value." It will be observed that in the charge complained of the principal idea of the court appears to have been to convey to the jury the thought that it was "immaterial whether the person sought to be blackmailed was guilty or not guilty." Furthermore, the charge criticised contains this language: "The question for the jury to determine is whether or not he was accused by the person who was attempting to blackmail, if there was any such conduct—*if he was accused of a crime or an offense.*" An examination of the charge of the court shows that, in a sentence immediately following the excerpt under consideration, the court instructed the jury as follows: "You determine as to whether or not these defendants did verbally accuse H. F. McWhorter with the crime and offense of unlawfully opening United States mail, and whether they then and there had the intent to extort three hundred dollars in money, or any other sum of money, from the said H. F. McWhorter, and threatened to prosecute said McWhorter unless this amount so demanded was paid." Here the court carefully followed the precise charge made in the indictment; and when the excerpt complained of is considered in the light of its immediate context and the clear and unequivocal charge just quoted, we do not think that the jury could have had any doubt that in order to convict the defendant, the evidence had to show that the defendant verbally *accused* McWhorter of a crime. We hold that there is no merit in this special ground.

Special ground 3 complains that the court charged the jury as follows: "If you should find those facts to be true, or that the

threat or demand was substantially made as alleged in the indictment; if you find all these facts to be true, as set out in the first count, and find it beyond a reasonable doubt, it would be your duty to convict them on that count of the indictment." It is insisted that this charge was erroneous for the reason that it "permitted the State to prove *substantially* what was charged in the indictment." The indictment charges a demand for money, coupled with a threat to prosecute unless the money was paid. We do not think it was reversible error for the court to instruct the jury in effect that it was only necessary for them to find that "the threat or demand was substantially made as alleged in the indictment." Neither do we think that the judgment should be reversed "because the court in said charge permitted the jury to consider a threat or demand as sufficient to authorize a conviction."

Special ground 4 complains of the following charge of the court: "If you should find the defendants did go to H. F. McWhorter in reference to some offense or offenses which it was he had committed, but that there was no criminal intent on their part, *no intent on their part to extort money from the said McWhorter; or on the part of anyone else, whereby they might have been acting in conjunction with another person, if they were so acting,*—I say if you find there was no criminal intent on their part, it would be your duty to acquit them." The criticism of this charge is that "the expression by the court therein, 'or on the part of any one else,' was contrary to law, in that it placed upon the defendants a greater burden than that imposed by law, in that it rendered these defendants guilty of the offense charged if the jury should find that there was intent upon the part of any one else to extort money from H. F. McWhorter; and there is no evidence in said case authorizing such charge." In charging the jury that if there was no criminal intent on the part of the defendants "or on the part of any one else, whereby they were acting in conjunction," etc., the court evidently had reference to Floyd Thompson, whose name McWhorter was charged with forging. Mrs. McWhorter testified: "They [the defendants] told him [McWhorter] he had violated the law and forged his name on the check, and if he didn't pay the $300 they would carry it to the Federal court. . . They said they came as friends to compromise between him and Mr. Thompson—that Thompson wouldn't push the case if he would pay them $300, and

it would be all right. . . Both said it; one would say and the other would sanction it." While Floyd Thompson testified that he had not authorized McWhorter to sign his name to the check in question, he also swore: "In my conversation with Fred McWhorter, I agreed to take $50, and I told him what I had lost waiting for the check. . . I said I had lost approximately $300. . . However, I waived all of that, the $300." Furthermore, there is evidence from which it might be fairly concluded that Thompson authorized the check to be sent to McWhorter in order to enable a friend of Thompson's to purchase a coffin from McWhorter, and that, after McWhorter had delivered the coffin, Thompson made McWhorter repay him the $50 the latter had gotten on the check, and the man who actually got the coffin never paid anybody anything. While the charge complained of was not aptly worded, we hold that, under the evidence in the record, the court did not commit reversible error in giving it.

In special ground 5 "movants contend that their whole defense made by the evidence in said case was that they were seeking, at the request of Fred McWhorter, to dispose of for him a threatened action against him by one Thompson, and that they merely reported to McWhorter what Thompson had said to them." We can not agree with counsel that the defense indicated in the foregoing quotation was the "whole defense." To our minds, the main issue in the case is whether or not Eller committed the acts charged in the indictment. Indeed, it is somewhat doubtful if the contention that the defendants were merely acting as the friends of McWhorter in attempting to settle the prosecution referred to in the indictment is raised by *the evidence in the case.* Furthermore, even if it should be deemed that said issue was raised by the evidence, it occurs to us that it was really collateral to the main issue. There was no request to charge the defense referred to in this ground, and we hold that the ground discloses no cause for reversal.

It appears from the last special ground that after Baker had testified that McWhorter came to him and had a conversation with him in regard to the check, the court refused to allow Baker to state what McWhorter had said to him on that occasion. The evidence was objected to "unless it is connected with Eller." Counsel for plaintiff in error then said: "We expect to show that Mr. McWhorter came to Mr. Baker and asked him to assist him in this

matter, and Mr. Baker was to get Mr. Eller to go with him for that purpose and that they went to see this man Thompson, and came back and reported to McWhorter in that conversation." The court ruled: "You can only use him in connection with Mr. Eller. As I understand the witness, Mr. Eller was not present. I will let it go in, not as having any probative value, but to explain his conduct." Counsel for the accused then said: "We expect to show that he was requested by McWhorter to go to Mr. Thompson and get Thompson to drop any charges against him, and in pursuance of that arrangement to go and get Eller to go with him." The court's final ruling was: "Well, he can't be cross-examined in regard to that; he is not a competent witness." It does not appear from the ground either that counsel afterwards proved what he said he expected to show, or that he subsequently offered the testimony in question. We hold that the ground shows no cause for reversal.

We come now to the general grounds of the motion for a new trial. We have already stated our conclusion that the indictment charges the defendants with verbally *accusing* McWhorter of crimes, with intent to extort money from him. Mrs. Fred McWhorter, testifying in regard to the occasion when Baker and Eller came to her husband's house and conversed with him, swore in part: "They [the defendants] told him that if he would pay them $300, they would keep it out of court; if he didn't, they would take it to the Federal court, and that he couldn't get out of it under five or six thousand dollars for opening the letter, and that he couldn't get out of spending his life in penitentiary, and wouldn't it be a pity to see his wife and daughter penniless and everything gone, and 'Now, damn you, old man, if you want to do that, just do that, if you don't want to spend $300; we are your friends, and if you will pay this, we will take the $300 and settle this out of court, and then you won't have to pay five or six thousand dollars.' They said besides that he had forged his name on this check—forged Thompson's name. They demanded of Mr. McWhorter $300. . . Mr. McWhorter did not offer at that time to pay that. After they had talked . . he finally took his foot off the fender of the car and said: 'You boys tell him I have done exactly what I thought was right, and I have paid him back the money for the casket, and if he gets any more money from me.' They were referring to Mr. Floyd

Thompson. . . They told him he had violated the law and forged his name on the check, and if he didn't pay the $300 they would carry it to the Federal court. . . They said they came as friends to compromise between him and Mr. Thompson—that Thompson wouldn't push the case if he would pay them $300, and it would be all right. Both of them said that; both of them were talking. . . One would say it and the other would sanction it. They said he had sent them, and said, 'Old boy, we are your friends, and he said to tell you if you will pay this $300, there will be nothing to it and he won't carry it to the Federal court, but if you don't you will go to the penitentiary, and your wife and daughter will be penniless.' Both of them said that, he said 'If you don't pay it, he will carry it to the Federal court.' Both of them said that, and they were talking about Thompson. . . They were telling him that Thompson wanted $300, but that it could be paid to them. They tried to get it that way. . . My husband didn't tell me he had asked Roy Baker . . to go to the mountain and see . . Floyd Thompson as a friend of his, and see if he could adjust this whole matter, and so Thompson wouldn't prosecute him. I know that he didn't get them to go for that. . . He [Mc-Whorter] said that he had received Floyd Thompson's check in his care at Menlo, and he also told me he opened the letter and took Floyd Thompson's check out, and signed his name to it and indorsed it and got the money on it. . . I heard these defendants demand $300 to be paid to them. . . He [McWhorter] told me that Mr. Duncan died up on the mountain, and Mr. Thompson and Mr. Duncan's son came to the store to buy a casket, and Mr. Duncan said he didn't have the money for the casket, and . . 'I am obliged to have it;' and Mr. Thompson was boarding with them at the time . . and Mr. Thompson says: 'Mr. McWhorter, I will pay for the casket; I have $50 coming to me from Centre, Alabama, . . and you can go to the telephone and call down there and ask about me, and tell them to send it to me in your care; and you open it, and I am not afraid of Mr. Duncan's never paying me.' Fred let him have it . . Fred said he paid him back the money."

Floyd Thompson, sworn for the defendant, testified in part that he never authorized McWhorter to "indorse or cash that check;" that McWhorter told him about the check and paid him the $50

he had gotten by cashing the check about two weeks after the check was due to be sent him; and that witness had nothing to do with the Duncan funeral expense. On cross-examination, Floyd Thompson testified in part: "I was living at the Duncan home . . and I came down with young Mr. Duncan to arrange for this casket. Mr. McWhorter at first declined to furnish the casket. He said he should have some money . . and I told him . . that I had $50 coming to me from Centre, Alabama, and that I would pay him part of it on the casket. . . I told him to go to the telephone over at Centre and confirm it. Mr. Duncan and me stayed there in the place of business . . and he came back and said he had confirmed the fact that they owed me $50. He didn't say they were going to send the check. After he cashed the check, he gave me the money, and that ended it so far as I was concerned. I never authorized Mr. Baker or Mr. Eller or anybody else to go to Fred McWhorter and demand $300. I never talked with them. . . I never made any demand of any kind on Fred McWhorter after he paid that $50, and he came to me first and told me what he did, and gave it back to me. . . In the conversation with Fred McWhorter I agreed to take the $50, and told him what I had lost waiting for the check. . . I said I had lost approximately $300. . . However, I waived all of that, the $300. . . I simply said I had lost a job in waiting; I had lost $250 or $300, and I had lost that by reason of the delay; and he said he would give the $50 back, and I told him that would release him so far as I was concerned."

The $50 check in question, signed by the treasurer of Cherokee County Public Schools, payable to the order of F. H. Thompson and indorsed, "F. H. Thompson, H. F. McWhorter," in McWhorter's handwriting, was introduced in evidence. It appears from the record that H. F. McWhorter killed himself shortly after paying back to Thompson the $50 procured by McWhorter on said check.

Roy Baker, sworn as a witness in behalf of his codefendant, Eller, testified in part: "I had a conversation with Mr. McWhorter with regard to that [said check]. Mr. McWhorter came to me. I went to Mr. Eller and got him to go with me. He didn't call Mr. McWhorter out. . . He came out to the car where I was sitting. Mr. Eller said there is absolutely nothing going to be

done about that transaction. . . Mr. Eller did not make any demand for payment of $300. Mr. Eller didn't curse Mr. McWhorter . . and no demand was made for payment of any kind." In his statement to the jury in his own behalf, Baker pitched his defense squarely upon the idea that McWhorter approached him and asked him to get his (McWhorter's) differences with Thompson settled, and that he was acting as a friend and agent of McWhorter in trying to settle said differences.

Eller's statement to the jury was as follows: "I just recall being with Mr. Baker that afternoon. He asked me to go with him and tell Fred McWhorter what the boy said; and I told him I didn't think there was any danger of him prosecuting him after he paid him. Fred said he paid his money back, and said Thompson lost two or three hundred dollars. We both said he was done with it and wasn't going to do anything. I told him what the boy said, and so did Mr. Baker. And that is all I know about the case."

The gist of Lee Eller's testimony in behalf of his codefendant, Baker, was that Baker "did not threaten to prosecute Mr. McWhorter in courts at all if he didn't pay him money, . . did not make any threats to prosecute him for illegally opening mail;" and that he heard the entire conversation. The witness further swore: "I did not hear all of the conversation between Baker and Thompson. Mr. Thompson told Mr. Baker that Mr. McWhorter needn't be uneasy, he wouldn't give him any more trouble. That's all I heard Mr. Thompson say in the conversation."

The brief of evidence is long, and we have not undertaken to set out all the evidence in the case. We think, however, that we have stated enough of it to sustain our conclusion that the evidence supports the verdict.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*