27513. HOWARD v. THE STATE.

DECIDED MAY 26, 1939.   REHEARING DENIED JUNE 28, 1939.

*John I. Kelley, John H. Hudson, C. E. Kay, Claude Brackett, G. H. Howard,* for plaintiff in error.

*John A. Boykin, solicitor-general, E. E. Andrews, J. W. LeCraw,* contra.

GUERRY, J.   Howard, a deputy sheriff of Fulton County, Georgia, was tried on an indictment containing nine counts, each count charging a separate act of bribery, in that as such officer he received bribes to prevent the proper performance of the duties of his office, each act being specifically alleged. The State abandoned the third count, and the jury returned a verdict of not guilty as to counts 1, 2, and 6, and a verdict of guilty as to counts 4, 5, 7, 8, and 9. All of the acts charged were alleged to have occurred within two years before the return of the indictment, except as to the acts charged in the second count, it being alleged therein that the acts there charged were unknown until March 1, 1938.

Complaint is made in ground 4 of the motion for new trial that the judge erred in his charge therein set forth, it being contended that he failed to limit the acts necessary to prove guilt to a period within two years before the return of the indictment. It may be well to state that the court, after having given in charge the general law in respect to the defendant, took up each separate count of the indictment, and as to all of them, except the second count, charged that the acts proved must have been within two years preceding the return of this indictment into court, before the defendant could be found guilty. On the second count the court charged: "I charge you that would be barred by the statute of limitations, and you could not consider it unless you believed in connection therewith, from the evidence, that the solicitor-general, the prosecuting authority, did not have knowledge of it at the time of its commission or at a time within the two-year period. That is to

say, he had no knowledge of it until at the time which would have barred the action by the statute by reason of that much time having elapsed since the prosecuting officer learned of the existence of the charge." Inasmuch as this charge was limited to the second count, and as to each of the other counts the jury was specifically limited to a consideration of acts within the statutory period, the charge complained of, when considered in the light of the charge as a whole, was not erroneous.

In ground 5 error is alleged in that the court, in charging on the weight and credit to be given the testimony of the witnesses, undertook to give the substance of Code, § 38-107, but did not give it verbatim or in its entirety. It will be noted that in this case the State relied, for a conviction on most of the counts, upon the testimony of witnesses who were themselves admitted bribe-givers and violators of the prohibition law, and to whom immunity had been promised. The court expressly charged the jury to take these facts into consideration in weighing the testimony of the witnesses, and then stated that the law made the jury the exclusive judges of the credibility of the witnesses, and that in passing upon their credibility "you may consider the interest or lack of interest of a witness. You may consider his relationship to any of the parties involved in the case or absence of any such relationship. You may consider any bias or prejudice, if such should exist in the case, the witness's intelligence or want of intelligence, his means and opportunity for knowing the facts to which he testified, the reasonableness or unreasonableness of the facts to which he testified; and you may consider the personal credibility of the witness in so far as that legitimately appears from the trial before you." The plaintiff in error insists that this charge fails to cover every item and circumstance as detailed in Code, § 38-107, and that under the decision in *Shankle* v. *Crowder*, 174 *Ga.* 399 (163 S. E. 180), reversible error was committed.

In *Eller* v. *State*, 48 *Ga. App.* 163, 165 (172 S. E. 592), this court said, in a similar complaint where the court attempted to charge this section but failed to charge it in its entirety: "While the 'preponderance-of-evidence' rule is always applicable in a civil case, it is inappropriate in a criminal case, where the State is required to prove the guilt of the accused beyond a reasonable doubt. . . It is ordinarily inapt to charge § 5732 [38-107] in a crim-

inal case, but so doing is not reversible error if the instruction appears to be harmless." In *Thompson* v. *State,* 160 *Ga.* 520 (128 S. E. 756), it was held that where the charge of this section was substantially correct, there was no error. In the *Shankle* case, supra, a civil case, the part omitted was "the personal credibility of the witness." The charge in this case, above quoted, shows that this section was charged in its entirety, except as "to the manner of testifying." This omission was harmless. The court charged the "reasonableness or unreasonableness," rather than the probability or improbability, of the testimony. The meanings of the terms "reasonable" and "probable," as here used, are so nearly the same that even in a civil case such charge would not be held to be improper. There is no merit in the complaint. The same may be said in reference to ground 6, which complains that the court in effect instructed the jury to apply the law to the facts obtained from the evidence and "apply the one to the other, and in that manner reach the truth of the case." The court had elsewhere fully instructed the jury as to the defendant's statement which they might accept in preference to all the sworn evidence, and it was not error to fail to charge in connection with the principle then being given. See *Tucker* v. *State,* 133 *Ga.* 470 (5) (68 S. E. 786).

Ground 7 of the motion is in respect to the evidence in support of the eighth count, it being contended that the testimony of the State's witness in support of this count was too indefinite to fix the time of the commission of the act alleged within two years before the return of the indictment. The testimony of this witness, when read in its entirety, was sufficient to support a finding that some of the acts testified to had occurred within a period of two years before the return of the indictment. Even though it be granted that the testimony of this witness on direct examination was inconsistent with his testimony on cross-examination, he continued to swear positively that the last bribe given was "in the fall of 1936." He was not such a party to the case as to hold that his testimony was not without probative value. See *Sherman* v. *Stephens,* 30 *Ga. App.* 509 (4) (118 S. E. 567); *Reaves* v. *Columbus Electric Co.,* 32 *Ga. App.* 140 (122 S. E. 824).

Grounds 8, 9, 10, 11, 12, 14, 16, 17, 20, 21, and 22 of the motion for new trial, being exceptions to rulings on evidence, requests

to charge, motions to declare mistrial, and the like, are without merit, and require no discussion.

Ground 13 of the motion is in respect to a request to charge on the subject of immunity, and the effect of the repeal of the prohibition law. The language used in the request was not a correct statement of the law; nor are we able to see, in the light of the charge as a whole, that it was harmful error to refuse such request.

We do not think that the exception taken in ground 15 is well taken. The fact that the solicitor-general, on objection being made to a question propounded by him, states what he expects to prove by the witness is no ground for declaring a mistrial, although the court sustains the objection made, where it does not also appear that such statement, made in the presence of the jury, was prejudicial, which does not here appear. To hold otherwise would be to subject a case to have a mistrial declared whenever evidence was unsuccessfully sought to be introduced. Moreover, we think the statement by the solicitor-general as to what he expected to prove in the present case was entirely proper, and was not subject to the objection offered. The solicitor-general had asked the witness for the defendant what was the value of the house the defendant lived in. On objection on the ground of irrelevancy and immateriality, the solicitor-general said, "I am showing how he made $155 a month and was buying automobiles and living in a fine house on the $155 a month, and paying alimony to one wife and keeping up another." The extravagance of the defendant, the money he spent compared with the money he earned or the income he had, were circumstances which might illustrate motive in accepting a bribe. See *Camp* v. *State*, 31 *Ga. App.* 737 (7) (122 S. E. 249), and cit.; *Williams* v. *State*, 177 *Ga.* 391 (2) (170 S. E. 281).

The alleged newly discovered evidence was merely cumulative and impeaching in its character, and was not such as would be likely to cause a different result at another trial.

The request to charge as set out in ground 19 of the motion was fully covered in the charge as given, and it was not error to refuse the same. The charge of the court limiting the evidence as to other crimes to the specific purpose for which it was admissible was an unusually clear statement of the law in respect to this principle, and in no other part of the charge was this principle limited or detracted from.

In ground 23 the defendant excepted to the overruling of his motion for continuance. The indictment was returned on May 16. The case was called for trial on June 1. At that time the defendant moved for a continuance on the grounds that he had not had sufficient time to prepare the case for trial, and that popular excitement, as shown by newspaper articles attached to the motion, made it impossible for him to obtain a trial before a fair and impartial jury. As was said in *Thomas* v. *State, 27 Ga. 287,* "Popular excitement alone [is] not sufficient of itself to postpone the trial of a case, *except under extraordinary circumstances.*" No such extraordinary circumstances are shown in this case. The fact that the newspapers of a community have dwelt on a crime situation that is being investigated by the grand jury will not of itself cause the postponement of a case reached in its regular course. As was said in *Thompson* v. *State, 24 Ga. 297,* "Prior to the act of 1856, in relation to the qualification of jurors to serve on the trial of persons charged with felonies [we see no reason for variation where the offense is a misdemeanor], this court had inclined to listen favorably to applications of this sort. Since that time it is impossible that a party on his trial for such an offense, if he choose to avail himself of all his legal rights, can have an unfair trial, unless it be by the perjury of the persons put upon him as jurors, or the palpable misconduct of the officers of the law." For a full discussion of the principles see *Hulsey* v. *State, 172 Ga. 797.* The court, in certifying to the grounds of the motion, said that counsel for the accused particularly disaffirmed any request for postponement of a few days, but stated: "If we could get a continuance for as much as sixty days, we would much prefer that; and if we can not, then we would prefer to go to trial at this time rather than a materially shorter period of continuance." The newspaper articles presented were of not such kind or character as to render it an abuse of the discretion vested in a judge to overrule a motion to continue, based on the arousal of public excitement. Circumstances which would be sufficient to cause a postponement of a trial for sixty days must indeed be extraordinary and unusual. The court did not err in overruling the motion to continue.

The defendant filed what he called a plea in abatement to the indictment, containing thirty or forty pages of reading matter and exhibits. In substance, the plea, or motion to quash, alleged that

while the indictment was returned by the May-June term grand jury of Fulton County, the March-April term grand jury had been continuously in session, investigating this defendant and others in connection with graft and bribery acts in law-enforcement arresting officers, and that the solicitor-general and the March-April grand jury had promised to the witnesses examined before them, who were themselves violators of the prohibition law and bribe givers, immunity from prosecution in return for their turning State's evidence. It was further alleged that the foreman of the March-April grand jury, on April 12, gave out a statement which was published in all the daily papers of Atlanta, in which he said that a great mass of testimony had been presented to the grand jury, which revealed an astounding picture of connection between a considerable number of law-enforcement officers and men engaged in liquor traffic and other illegal enterprises, and that the probe would go on and this grand jury will turn over to the succeeding grand jury all the evidence accumulated, so that it might carry on the work of cleaning up the situation.

It was further alleged that the assistant solicitor-general in charge of the investigation said, in an interview which was published, that "immunity would be deserved and recommended to any officer or other violator who helps clean up the situation, which has become deplorable, and those who fail to testify are going to be prosecuted vigorously." It was also alleged that the indictment against this defendant was not returned on evidence alone which was given before the grand jury returning the bill, but on reports of testimony delivered to the preceding grand jury. A traverse was filed to this particular allegation, and on a trial thereof the traverse was sustained. The plaintiff in error contends that the statement of the March-April grand jury, which was in general terms as to the character of the investigation it was making, and that it was turning over the accumulated evidence to the succeeding grand jury, was a betrayal of its oath of secrecy. It is further contended that the solicitor-general and the grand jury had no right to promise immunity to witnesses, and that these acts constituted a denial of the due-process clause to this defendant and prevented a fair and impartial trial of his case. The court sustained a demurrer to all the paragraphs of the plea, except those to which a traverse was filed; and as to them the traverse was sustained.

We think the plea was wholly without merit. The demurrer was properly sustained, and the action of the court in sustaining the traverse was not improper. The fact that a grand jury at the preceding term of court had started investigations and had not completed them, and had then given out a statement that it recommended that its investigations be continued, is no reason to abate a prosecution based on an indictment returned by the grand jury at the succeeding term of the court, even if the act complained of, committed by the preceding grand jury, was violative of the law with respect to secrecy. The grand jury has occupied a prominent place in English and American courts for many centuries. Its investigations cover as wide a range as the statute laws, and its recommendations as to public welfare and the general good are not bound by any prescribed rules or limitations. Judge Russell, in *Camp* v. *Ætna Insurance Co.,* 170 *Ga.* 46, 50 (152 S. E. 41, 68 A. L. R. 1166), said, in reference to a charge by the judge to the grand jury: "The matters which are required by law to be submitted to the grand jury are stated in the Code. Aside from these, whether the occupant of the bench shall attempt to influence the action of any portion of the general public, either the membership of the General Assembly or others, is, in our opinion, a matter of taste and discretion entirely within the control of the presiding judge." It does not appear in the present case that the statement issued by the March-April grand jury was violative of its oath as to keeping secret the proceedings before it. It was more in the nature of a general presentment or recommendation which is a custom, hoary with age in Georgia at least, and is violative of no rights of the citizens. It was a condemnation of a criminal situation it had found to be present that needed attention by succeeding grand juries. It called no name; it referred in effect to a matter of general public import it had been considering. It is particularly and peculiarly the function of a grand jury to investigate crimes such as this. The power to summon witnesses and have them testify is one of the most efficient means for the discovery and prosecution of crimes which specially involve the public morals. Moreover, the failure of the grand jury to keep secret its proceedings did not violate any right of this or any other defendant; for this provision of the law is not prescribed for the benefit of those that may be accused of crime, but is for the protection

of public morals, and to prevent violators of the law from knowing that they are being investigated and thus have opportunity to conceal evidence.

As was said in Commissioners *v.* Mead, 12 Gray (Mass.) 167 (71 Am. D. 741), "The reasons on which the sanction of secrecy which the common law gives to proceedings before grand juries is founded are said in the books to be threefold. One is that the utmost freedom of disclosure of alleged crimes and offenses by prosecutors may be secured. A second is that perjury and subornation of perjury may be prevented by withholding the knowledge of facts testified to before the grand jury, which if known would be for the interest (of defendants) or their confederates to attempt to disprove by procuring false testimony. The third is to conceal the fact that an indictment is found against a party, in order to avoid danger that he may escape and elude arrest upon it before presentment is made." See 28 C. J. 813, § 113. In State *v.* Rothrock, 45 Nev. 214 (200 Pac. 525), it is said: "The provisions of our statute relative to keeping secret the proceedings before the grand jury were not enacted for the *benefit of those who were investigated* and indicted by the grand jury, *but for the protection of the public.*" See also People *v.* Young, 31 Cal. 564; People *v.* Kresel, 142 Misc. 88 (254 N. Y. Supp. 193). "The inquisitorial power of the grand jury is the most valuable function which it possesses to-day and, far more than any supposed protection which it gives to the accused, justifies its survival as an institution. As an engine of discovery against organized and far-reaching crime, it has no counterpart. Policy emphatically forbids that there should be any curtailment of it except in clearest cases." In re Grand Jury Proceedings, 4 F. Supp. 283 (3).

Moreover, the action of the March-April grand jury in violating its oath of secrecy, if such it was, and if such act constituted a violation of any right of the present defendant, could not be urged as a plea in abatement against an indictment found against this defendant by another grand jury at a succeeding term of the court. If this act had disqualified such succeeding grand jury, it was an act known to this defendant and his counsel; for he attached copies of all the Atlanta papers in which such alleged secrets were published, and he should have made objection to the array when he found that he was one of the parties referred to, and before the grand jury had taken action against him.

Another ground insisted upon was that immunity had been promised to State witnesses by the solicitor-general and the preceding grand jury, and that this constituted a reason to abate the indictment. The promise of immunity by the State's counsel to a witness for the State has and can have no effect on the rights of the accused, save that it may be considered by the jury as affecting the credibility of the witness when he is offered. Whether or not such a body or officer may promise immunity, and the State be bound thereby, is a question which can arise only as between such witness and the State, and not as to the person against whom such witness may testify. As was said in U. S. *v.* Ford, 99 U. S. 594 (25 L. ed. 399), "It has never been held that one who is guilty of crime can not be punished merely because others have not been prosecuted or convicted. The extension of immunity to a particeps criminis who has turned State's evidence has existed from time immemorial." The law itself provides for immunity in certain cases; and as against the provision that a witness is not compelled to give testimony against himself, we find that the Code, § 58-116, which is in reference to giving testimony in liquor-law violations provides: "but a witness shall not be prosecuted for any offense as to which he testifies before the grand jury." The Code, § 26-6407, declares "On the trial of any person for offending against sections 26-6401, 26-6403, 26-6404, 26-6405, or 26-6406, any other person who may have played and bet at the same time or table shall be a competent witness, and be compelled to give evidence; and nothing then said by such witness shall at any time be received or given in evidence against him in any prosecution, except on an indictment for perjury in any matter to which he may have testified." We are not called on here to decide whether the alleged promise of immunity was effectual or binding. This defendant is not concerned therewith. Such a promise affects only the witness to whom it is made. It is admissible in so far as it may affect the credibility of the witness to whom immunity has been promised; beyond this it does not concern the defendant on trial. See 16 C. J. 94.

The special demurrer to count 9 was properly overruled.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*