## ROZIER *v.* THE STATE.

No. 14792. MARCH 8, 1944.

424

*R. I. Stephens,* for plaintiff in error.

*T. Grady Head, attorney-general, James F. Nelson, solicitor-general, Lester F. Watson,* and *L. C. Groves, assistant attorney-general,* contra.

JENKINS, Presiding Justice. 1. The evidence fully authorized the verdict.

2. "Declarations by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, shall be admissible in evidence in a prosecution for the homicide." Code, § 38-307. Thus, dying declarations are not admissible in civil cases (*East Tennessee, Virginia and Georgia Railroad* v. *Maloy,* 77 *Ga.* 237 (2), 2 S. E. 941); and in criminal cases, in order to be admissible they must relate to the cause of death or the person who killed the deceased (*Hawkins* v. *State,* 141 *Ga.* 212 (4), 80 S. E. 711); but any such declaration illustrating these issues is competent to prove any relevant fact embraced in the res gestæ of the killing. *Wilkerson* v. *State,* 91 *Ga.* 729 (3) (17 S. E. 990, 44 Am. St. R. 63). Accordingly, every fact or circumstance shedding light upon the transaction, including such conversation and conduct of the parties as are properly

parts of the res gestæ of the homicide, may lawfully go to the jury in a dying declaration made by the deceased. *Bush* v. *State,* 109 *Ga.* 120 (3) (34 S. E. 298); *Doyal* v. *State,* 70 *Ga.* 134 (4), 146; *Strickland* v. *State,* 167 *Ga.* 452 (4) (145 S. E. 879); *Wilkerson* v. *State,* supra; *Scrutchens* v. *State,* 146 *Ga.* 189 (2) (91 S. E. 25); *White* v. *State,* 100 *Ga.* 659 (2) (28 S. E. 423); *O'Neal* v. *State,* 172 *Ga.* 526 (158 S. E. 51). Under these rules the court properly excluded the testimony of the doctor which related to the good character and qualities of the decedent, but properly admitted the remainder of his testimony which recounted the dying declaration of the decedent, and explained that the decedent had started to a neighboring house where there had been previous trouble in order to quiet a fuss he heard going on, and that he met the defendant on the way, at which time the homicide occurred. This preliminary statement as to when, how, and why the decedent came to meet the defendant was the portion of the dying declaration objected to; the evidence of the dying declaration as to the homicide itself being that when the decedent on meeting the defendant asked him what the trouble was up there, the defendant without making any reply shot him in the abdomen with a shotgun.

3. There was evidence by the arresting officer of a voluntary statement made to him by the defendant that the defendant shot the deceased because the defendant was mad and because Essie's boy, Ed Evans, had shot the defendant. The State offered the testimony of Essie Evans and other witnesses as to what happened at the house of Essie where the violence occurred: the breaking in of the house and the smashing of an automobile by the defendant, and including the discharge of fire-arms by the defendant and others. This was the house to which the deceased was going when the homicide occurred. It was objected to as irrelevant and prejudicial, in that the deceased was not present at the time the violence occurred immediately preceding the homicide. This testimony corroborated the dying declaration of the deceased as to the existence of the disorder, and was offered to illustrate the motive, malice, intent, and state of mind of the defendant immediately preceding the homicide. Since these transactions occurred immediately preceding the homicide, and since they constituted the cause and occasion of the homicide and clearly tend to explain it, the testimony was properly admitted. As to a very similar situa-

tion, see *Helms* v. *State,* 138 *Ga.* 826, 829 (76 S. E. 353). See also *Wilson* v. *State,* 173 *Ga.* 275 (2) (160 S. E. 319) ; *Price* v. *State,* 166 *Ga.* 120 (2) (142 S. E. 666).

*Judgment. affirmed. All the Justices concur.*